**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr><td>
CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY A/S/O DAVID KRUG,<br><br>
          Plaintiff,<br><br>
  v.<br><br>
STIHL, INC.,<br><br>
          Defendant.
</td>
<td>
Civil Action No. 22-5893 (JXN)(MAH)<br><br>
<b><u>OPINION</u></b>
</td></tr>
</table>

**NEALS**, District Judge

Before the Court are Defendant STIHL Incorporated's ("STIHL") motions: (1) to exclude Plaintiff Cambridge Mutual Fire Insurance Company ("Cambridge") a/s/o David Krug's ("Krug") (collectively, "Plaintiff") expert Larry Wharton's ("Wharton") opinions pursuant to Federal Rule of Evidence[1] 702 (ECF No. 79)[2]; (2) to exclude Wharton's manufacturing defect opinion pursuant to Federal Rule of Civil Procedure[3] 37 (ECF No. 80)[4]; (3) to exclude Plaintiff's expert Michael Scherer's ("Scherer") opinions pursuant to FRE 702 (ECF No. 81)[5]; and (4) and to enter summary judgment[6] against Plaintiff under Rule 56 (ECF No. 82).[7]

---

[1] "FRE" hereinafter refers to the Federal Rules of Evidence.

[2] Plaintiff opposed (ECF No. 83), and STIHL replied (ECF No. 90).

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[4] Plaintiff opposed (ECF No. 87), and STIHL replied (ECF No. 91).

[5] Plaintiff opposed (ECF No. 84), and STIHL replied (ECF No. 92).

[6] In the alternative, STIHL moved to dismiss the Second Amended Complaint under Rule 12(b)(6). "Where, as here, a movant frames a motion to dismiss in the alternative as one for summary judgment, the Court may convert the motion without notice, because the motion itself puts the non-moving party on sufficient notice that the Court might treat the motion as one for summary judgment." *Orden v. Borough of Woodstown*, 181 F. Supp. 3d 237, 243 (D.N.J. 2015). Accordingly, the Court treats STIHL's alternative motion to dismiss as one for summary judgment as well.

[7] Plaintiff opposed (ECF No. 86), and Defendant replied (ECF No. 93).

Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1441(a), respectively. The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, STIHL's motion for summary judgment (ECF No. 82) is **GRANTED**. The motions to exclude (ECF Nos. 79, 80, 81) are **DENIED** as moot.

## I.      BACKGROUND

### A.      Statement of Facts

This action arises out of a fire that damaged Krug's New Jersey home ("Property"). (*See* Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 7–8.) Cambridge, a Massachusetts insurance company authorized to issue insurance in New Jersey, insured the Property and filed this subrogation lawsuit. (Def.'s SUMF ¶¶ 1–2, 5, 7.)

STIHL makes battery-powered tools, batteries, and battery chargers. (*Id.* ¶¶ 6, 11–13.) In May 2020, Krug bought a battery powered STIHL chainsaw, two STIHL batteries, and a STIHL battery charger. (*Id.* ¶¶ 11–12.) He used the chainsaw, the batteries, and the charger without issue for about two years. (*Id.* ¶¶ 13–15.) Then, in March 2022, a fire broke out in Krug's garage. (*Id.* ¶ 8.) He claims the fire started "at a wooden workbench in the garage" where he left a STIHL battery on the STIHL charger to charge overnight. (*Id.*) Plaintiff claims that leaving the STIHL battery on the charger overnight caused the battery to overcharge and ignite, causing the fire. (*Id.* ¶ 9.)

### B.      Procedural History

In August 2022, Plaintiff sued STIHL in New Jersey state court for strict product liability. (*See* Compl., ECF No. 1-1.) STIHL timely removed. (*See* Notice of Removal, ECF No. 1.) STIHL then moved to dismiss (First Mot. to Dismiss, ECF No. 6), which the Court granted (Opinion on First Mot. to Dismiss, ECF No. 16).

Plaintiff filed an Amended Complaint in September 2023. (*See generally* Am. Compl., ECF No. 18.) The Amended Complaint included causes of action for design and manufacturing defects ("Count I"), and a defect pursuant to the indeterminate product defect test, as adopted in *Myrlak v. Port Authority of New York and New Jersey*, 723 A.2d 45 (N.J. 1999) ("Count II"). STIHL moved to dismiss the Amended Complaint (Second Mot. to Dismiss, ECF No. 25), which the Court granted (Order on Second Mot. to Dismiss, ECF No. 51). The Court dismissed Count I without prejudice and Count II with prejudice. (*Id.*)

On October 16, 2024, Plaintiff filed a Second Amended Complaint. (*See* Second Am. Compl. ("SAC"), ECF No. 52.) The Second Amended Complaint brings a strict liability manufacturing defect claim based on circumstantial evidence and the indeterminate product defect test. (*Id.* ¶106.) The parties completed all fact and expert discovery by June 11, 2025.[8] (*See* June 12, 2025 Order, ECF No. 74.) Plaintiff retained two experts: Scherer and Wharton. (*See* Pl.'s Counterstatement of Undisputed Material Facts ("CSUMF") ¶¶ 198–99, 263–65, ECF No. 85.) Scherer authored a report about the origin and cause of the fire. (*See* Pl.'s Ex. 2 ("Scherer Report"), ECF No. 85-2.) Based on his examination of the scene, reports, testimony, and evidence, Scherer concluded the fire originated on the left side of a wooden workbench in the garage, the ignition source was the STIHL battery being charged on the wooden workbench, and the cause was an "[u]ndetermined failure of the" STIHL battery. (*Id.* at 33.) Wharton authored a report about the cause of the fire. (*See* Pl.'s Ex. 3 ("Wharton Report"), ECF No. 85-3.) He concluded the "fire at

---

[8] STIHL moved to dismiss the Second Amended Complaint in January 2025. (*See* Third Mot. to Dismiss, ECF No. 58.) Because the Court had not ruled on the motion as of the June 11, 2025 settlement conference, the Court terminated the motion and directed STIHL to renew it along with a motion for summary judgment. (*See* June 12, 2025 Order.)

the Krug property resulted from a failure of the Stihl battery pack that was being charged. The first fuel ignited was the plastic materials and components of the battery pack." (*Id.* at 7.)

STIHL moved to exclude Wharton's opinions under FRE 702 (Wharton 702 Mot., ECF No. 79) and under Rule 37 (Wharton Rule 37 Mot., ECF No. 80); to exclude Scherer's opinions under FRE 702 (Scherer Mot., ECF No. 81); and for summary judgment (Mot. Summ. J., ECF No. 82). Plaintiff opposed,[9] and STIHL replied.[10](ECF No. 90). The matters are now ripe for consideration.

## II.    **LEGAL STANDARD**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The Court also will not

---

[9] (*See* Opp'n to Wharton 702 Mot., ECF No. 83; Opp'n to Wharton Rule 37 Mot., ECF No. 87; Opp'n to Scherer Mot., ECF No. 84; Opp'n to Mot. Summ. J., ECF No. 86)

[10] (*See* Reply to Wharton 702 Mot., ECF No. 90; Reply to Wharton Rule 37 Mot., ECF No. 91; Reply to Scherer Mot., ECF No. 92; Reply to Mot. Summ. J., ECF No. 93.)

"resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

## III.    **DISCUSSION**

The Court starts with the motion for summary judgment. STIHL argues summary judgment is warranted because (1) if the Court excludes Scherer and Wharton, Plaintiff has no evidence of causation; and (2) Plaintiff has no evidence of a manufacturing defect. (*See generally* Mot. Summ. J.) The first argument depends on the Court granting STIHL's motions to exclude; the second argument does not.

As this is a diversity case brought in a New Jersey court, the Court applies New Jersey law to resolve this dispute. *Barbey v. Unisys Corp.*, 256 F. App'x 532, 533 (3d Cir. 2007). The New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-2, provides "the sole method to prosecute a product liability action" under New Jersey law. *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (quoting *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398–99 (App. Div. 1991)). To state a products liability claim, the plaintiff must show (1) the product

5

was defective, (2) that the defect existed when the product left the manufacturer's control, (3) the defect proximately caused injuries to the plaintiff, and (4) the plaintiff was a reasonably foreseeable or intended user. *Myrlak*, 157 N.J. at 97. A defective product "is not reasonably fit, suitable, or safe for the ordinary or foreseeable purpose for which it is sold." *Id.* A manufacturing defect "occurs when the product comes off the production line in a substandard condition based on the manufacturer's own standards or identical units that were made in accordance with the manufacturing specifications." *Id.* at 98. The plaintiff is not required to "prove a specific manufacturer's defect." *Moraca v. Ford Motor Co.*, 66 N.J. 454, 458 (1975). Rather, they need only show "proof, in a general sense and as understood by a layman, that 'something was wrong' with the product." *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.*, 65 N.J. 582, 591 (1974). Even so, "[t]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Myrlak*, 157 N.J. at 98.

> To prove a manufacturing defect, the plaintiff may offer
>
> (1) direct evidence that the defect arose in the hands of the manufacturer; (2) circumstantial evidence which would permit an inference that a dangerous condition existed prior to sale; for instance, "the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance"; or (3) by negating other causes of the failure of the product for which the defendant would not be responsible, in order to create an inference that the defect was attributable to the manufacturer.

*Toms v. J.C. Penney Co.*, 304 F. App'x 121, 125 (3d Cir. 2008) (quoting *Scanlon*, 65 N.J. at 591–93).

And, under the "indeterminate product test," the jury may infer "that the harmful incident was caused by a product defect, and that the defect was present when the product left the manufacturer's control," if the plaintiff shows their injury "(a) was of a kind that ordinarily occurs

6

as a result of a product defect" and "(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Myrlak*, 157 N.J. at 104.

### A.     There is no Direct Evidence of a Manufacturing Defect

Plaintiff offers no direct evidence of a manufacturing defect in either the STIHL battery or the charger. To be sure, "direct evidence that the defect arose in the hands of the manufacturer will be rare, since generally it would require the testimony of someone who was present and examined the product of the time of production." *Scanlon*, 65 N.J. at 592. But here, there is no evidence from someone who examined the STIHL battery when it rolled off the assembly line. Plaintiff, therefore, lacks direct evidence of a manufacturing defect.

### B.     Expert Testimony was Needed to Indirectly Prove a Defect

#### i.     *Circumstantial Evidence*

Circumstantial evidence of a manufacturing defect is evidence that "would permit an inference that a dangerous condition existed prior to sale." *Id.* at 592–93 (quoting *Jakubowski v. Minn. Min. & Mfg.*, 42 N.J. 177, 184 (1964)). The most important circumstantial considerations are "the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance." *Id.* at 593. "The product itself must be of a type permitting the jury . . . to infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer." *Id.*

In this case, Plaintiff needed an expert to provide circumstantial evidence of a manufacturing defect. Under New Jersey law, "expert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion.'" *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 450 (1993) (quoting *Wyatt by Caldwell v. Wyatt*,

7

217 N.J. Super 580, 591 (App. Div. 1987)). While the average juror likely has experience with using and charging a battery, they likely do not understand, among other things, how batteries are manufactured, the mechanics of how a STIHL battery operates, the chemistry and physics principles at work when a STIHL battery is charging, the properties that separate a normal STIHL battery from a defective one, and the changes in the chemical and electrical composition of a STIHL battery over time which would render it prone to an accident. *Cf. Kuhar v. Petzl Co.*, No. 19-3900, 2022 WL 1101580, at \*4 (3d Cir. Apr. 13, 2022) (requiring expert testimony to prove defect involving a "simple bolt" where bolt was part of a "micrograb," because "[t]he average juror, even assuming some familiarity with micrograbs, is unlikely to understand, among other things, the engineering design considerations; metallurgical aspects of plating the bolt; or the principles of physics at work on the bolt when in use."); *K & G Men's Co. v. Kibalko*, No. 06-5768, 2010 WL 1931131, at \*4 (D.N.J. May 12, 2010) ("Because most jurors are unlikely to posses an understanding of the inner-workings of a commercial steam iron and to know the circumstances under which such an iron could cause a fire, expert testimony will be necessary to assist jurors in assessing defect and causation."); *State Farm Fire & Cas. Co. v. Kaz, Inc.*, No. 6587-06, 2008 WL 2122639, at \*4 (N.J. Super. Ct. App. Div. May 22, 2008) ("The electrical wiring of an appliance and the electrical infrastructure of a house are not matters within a jury's common knowledge."). Because circumstantial evidence of a manufacturing defect in the STIHL battery "falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge," expert testimony is required. *Jerista v. Murray*, 185 N.J. 175, 199 (2005).

### ii.    *Evidence Negating Other Causes of Failure*

As discussed above, a plaintiff may also prove a manufacturing defect with evidence that "negate other causes of the failure of the product for which the defendant would not be responsible,

in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control." *Jakubowski*, 42 N.J. at 184. The cause of the failure must, in other words, be attributable to the manufacturer. *Id.*

However, as with other aspects of battery defects, battery manufacturing, distribution, sale, and handling, along with the possible causes of battery failure, fall outside "the common knowledge of the factfinder and depend[] on scientific, technical, or other specialized knowledge." *Jerista*, 185 N.J. at 199. Otherwise, "it would amount to mere guesswork" for the jury "to conclude . . . that the defect or dangerous condition of the disc was attributable to the period of manufacture . . . rather than," for instance, delivery or "possible subsequent misuse or overuse." *Jakubowski*, 42 N.J. at 187–88. Thus, expert testimony is required to negate other causes of the STIHL battery's failure.

### iii.    *The Indeterminate Product Test*

Under the indeterminate product test, Plaintiff must show the fire "(a) was of a kind that ordinarily occurs as a result of a product defect" and "(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Myrlak*, 157 N.J. at 104. "Generally, when a plaintiff relies on such a test, the use of expert testimony is not required." *Kuhar*, 2022 WL 1101580, at *5 (quoting *Jerista*, 185 N.J. at 199). But where the inference of a defect "falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge is expert testimony required." *Jerista*, 185 N.J. at 199. The causes of battery fires, the kind of defects causing battery fires, and the kind of defects that exist between manufacture and use, are not matters of common knowledge. Thus, expert testimony was necessary to prove a defect under the indeterminate product test. *Kuhar*, 2022 WL 1101580, at *5 ("Because of the particular facts in this situation, the knowledge needed

9

to understand the function of the bolt and micrograb falls outside of a factfinder's common knowledge.").

### C.    Plaintiff has Failed to Provide Expert Testimony on Defect

Having established that Plaintiff needed expert testimony to circumstantially prove the STIHL battery had a manufacturing defect, to negate other causes of failure, or to show the STIHL battery was defective under the indeterminate product test, the next question is whether Plaintiff has provided such expert testimony. The answer is no.

To be sure, Plaintiff provided Scherer and Wharton as experts. But the Court "is not precluded from granting summary judgment merely because expert testimony is admitted." *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999). "If, even given the proffered expert testimony, the proponent 'still has failed to present sufficient evidence to get to the jury,' summary judgment is appropriate." *Id.* (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999)). Here, both experts conclude that a failure in the STIHL battery caused the fire. (*See* Scherer Report at 33 (listing the cause as an "[u]ndetermined failure of the Stihl battery pack."); Wharton Report at 7 ("[I]t is the writer's opinion that the 3/23/22 fire at the Krug property resulted from a failure of the Stihl battery pack that was being charged.").)

Scherer, however, could not determine why the STIHL battery failed. (Scherer Report at 33.) And, while Wharton testified that a manufacturing defect (specifically, an errant metal shaving entering the battery's "jelly roll") *could* have caused the fire (*see* Def.'s SUMF ¶ 139; Pl.'s CSUMF ¶ 139), the parties agree that Wharton also stated he had never heard of such a defect causing a fire (Def.'s SUMF ¶ 140; Pl.'s CSUMF ¶ 140), that such a defect was "one potential of what could have happened" (Def.'s SUMF ¶ 142; Pl.'s CSUMF ¶ 142), and he had no opinion

about whether a manufacturing defect was more likely than not the cause of the fire (Def.'s SUMF ¶ 143; Pl.'s CSUMF ¶ 143).

In sum, there is no genuine dispute that (a) Scherer had no opinion about why the STIHL battery failed, and (b) Wharton had no opinion about whether a fire could not "have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer," *Scanlon*, 65 N.J. at 593, did not "negate other causes of the failure of the product," *Jakubowski*, 42 N.J. at 184, and could not determine that, in this case, the fire was not "solely the result of causes other than product defect existing at the time of sale or distribution." *Myrlak*, 157 N.J. at 104. Because Plaintiff has failed to provide competent expert testimony establishing (1) that the fire was due to a defect in the STIHL battery, (2) that the defect existed when STIHL manufactured it, or (3) that in this case, the fire was not solely the result of causes other than a defect, the Court **grants** STIHL's motion for summary judgment.

And, because the Court grants summary judgment for STIHL, STIHL's motions to exclude Scherer and Wharton are moot.

## IV.    CONCLUSION

For the foregoing reasons, STIHL's motion for summary judgment (ECF No. 82) is **GRANTED**. STIHL's motions to exclude Scherer and Wharton (ECF Nos. 79, 80, 81) are **DENIED as moot**. An appropriate Order accompanies this Opinion.

**DATED:** 3/12/2026

JULIEN XAVIER NEALS
United States District Judge

11